# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

SAMUEL BARROW,

              **Plaintiff,**

-v-

TERMINIX INTERNATIONAL
CO., L.P., et al.,

              **Defendants.**

**Case No. 3:07-cv-324**

**Judge Thomas M. Rose**

---

### ENTRY AND ORDER GRANTING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. #37)

---

This matter arises from Defendant Terminix International Co., L.P.'s ("Terminix's") failure to hire Plaintiff Samuel Barrow ("Barrow"). Defendant George Venturella ("Venturella") was the General Manager of Terminix's Dayton office at the time. Barrow had temporarily been placed in Terminix's Dayton office by Manpower Temporary Services ("Manpower") to work as a receptionist. On October 2, 2008, Thomas Noland, as Trustee of the Bankruptcy Estate of Samuel Barrow was substituted for Barrow. (Doc. #25.)

Barrow brings three claims for relief. (Doc. #2.) Each claim is against "Defendant" so the court is unable to determine which Defendant each particular claim is against.

Count I of Barrow's Complaint is against "Defendant" for race discrimination in violation of Ohio Rev. Code § 4112.02(A) as enforced through Ohio Rev. Code § 4112.99 and 42 U.S.C. § 1981. Count I alleges that "Defendant" refused to hire Barrow as a direct full-time employee because of his race.

Count II of Barrow's Complaint is for retaliation in violation of Ohio Rev. Code § 4112.02(I). Count II alleges that Terminix refused to hire Barrow after he engaged in protected conduct by complaining about race discrimination.

Count III of Barrow's Complaint is against Defendant for violation of Ohio public policy. Count III alleges that Defendant retaliated against Barrow for his good faith complaints regarding fraud against consumers in violation of Ohio public policy.

Barrow's Complaint was originally filed in the Court of Common Pleas of Montgomery County, Ohio. It was subsequently removed to this Court based upon this Court having federal question jurisdiction over Count I which includes an alleged violation of 42 U.S.C. § 1981. Barrow has not objected to the removal.

Now before the Court is Terminix's and Venturella's (collectively the "Defendants") Motion for Summary Judgment. (Doc. # 37.) This Motion is now fully briefed and ripe for decision. A Summary of the Facts will first be set forth followed by the Standard of Review and an analysis of the Defendants' Motion for Summary Judgment.

## SUMMARY OF FACTS[1]

Barrow is a "black American." (Deposition of Samuel Lewis Barrow, II ("Barrow Dep.") 9 Sept. 25, 2008.) He was born in 1960. (Id. 22.) Barrow has a Bachelor of Arts In Biological Science from Wright State University and attended the Indiana Micro Vascular Training Center School of Medicine and Wayne State Medical School. (Id. Ex. 7.)

In September of 1997, Barrow pled guilty to aggravated battery and vandalism, both

---

[1]The Defendants identify several currently pending and/or settled lawsuits in which Barrow is named the plaintiff . However, the details of these lawsuits are not presented because the Defendants have not shown how they are relevant to this Motion for Summary Judgment.

felonies, and to misdemeanor domestic violence and escape. (Id. 32-33, 49.) The aggravated battery, vandalism and domestic violence charges stemmed from a custody dispute with the mother of his son. (Id. 34-40.) The escape charge grew out of a bond violation and occurred while the other three charges were pending. (Id. 54-55.)

The charges were consolidated and Barrow was sentenced to 5 to 25 years in the state penitentiary. (Id. 33, 53.) He served four years of his sentence and was released in March of 2001. (Id. 34.) Barrow had no convictions prior to the aforementioned and has had none since. (Id. 65.)

### Application To Manpower and Assignment To Terminix

On October 1, 2001, Barrow applied for work through Manpower Temporary Services ("Manpower"). (Id. 137, Ex. 8.) In response to a question on Manpower's employment application, "Have you been convicted of a misdemeanor crime," Barrow responded "domestic violence." (Id. Ex. 8.) Barrow did not list his felonies on the application. (Id. 138.) However, Barrow testifies that he explained his criminal record to Manpower and that Manpower had identified him as someone with felonies. (Id.) He also testifies that Manpower did not send him to a company who did not want someone with a felony. (Id.)

In June of 2005, Barrow was assigned to work at Terminix at the North Dayton branch in a temp-to-hire position. (Compl. ¶ 3; Barrow Dep. 66, 79.) In this position, he answered telephones, fielded customer complaints and coordinated the service technicians for needed services. (Id. 153-54.) Barrow worked at Terminix, as a Manpower employee, from sometime in June of 2005 until August 5, 2005. (Id.)

Venturella, a Caucasian male, became the Branch Manager for Terminix's North Dayton

branch in August of 2005. (Deposition of George Venturella ("Venturella Dep.") 31 Oct. 6, 2008.) He had been training at the North Dayton branch to become a Branch Manager since December of 2005. (Id. 27, 31.) Venturella resigned from Terminix in November of 2005. (Id. 18.)

Nathan Caulfield, a Caucasian male, was Terminix's Service Manager for the termite technicians during 2005. (Deposition of Nathan Edward Caulfield ("Caulfield Dep.") 16 Sept. 26, 2008.) Robert Lowe ("Lowe"), an African-American male, was Terminix's Service Manager for the pest control technicians during 2005. (Id. 19.) Finally, Sharon Caulfield was the Office Manager at the time. (Compl. ¶ 2.) All three reported to Venturella.

Matt Maher ("Maher") was Terminix's HR person during 2005. (Venturella Dep. 33.) Maher was located in Indianapolis, Indiana. (Id.)

<u>**Alleged Discrimination Observed At Terminix**</u>

Barrow testifies that he observed discriminatory practices while in the receptionist position. (Compl. ¶ 5.) African-American and Mexicans seeking employment were told that Terminix was not hiring while, at the same time, Caucasians were given employment applications. (Barrow Dep. 159-71.) He observed this happening "probably 18, 19, 20 times." (Id. 161.) The only individuals that Barrow saw obtain employment applications were Caucasians. (Id. 168.) Barrow also testifies that, when African-Americans or Mexicans were given employment applications, the completed applications were immediately thrown in the trash. (Id. 171-72.)

In addition to the alleged discriminatory practices, Barrow testifies that he heard Venturella make racist remarks. (Id. 185-86.) Venturella allegedly said that he didn't think a

black man should be in the office. (Id. 185.) This was allegedly said in response to a comment by Caulfield that "a pretty girl would be nice" in the office. (Id.)

In addition, Barrow testifies that Venturella once used the "N" word in the garage. (Id. 186-88.) Venturella was referring to a customer who was African-American. (Id. 187.)

## Initial Application for Employment At Terminix

After about two weeks, Barrow and Venturella discussed Barrow being hired by Terminix as a Service Technician. (Barrow Dep. 84-85, 259; Venturella Dep. 52-53.) Venturella was impressed with Barrow's science background and biology degree. (Barrow Dep. 260.)

Barrow then submitted an application to Terminix for the Service Technician position. (Id. 84-85.) Barrow claims that Terminix was, at the time, aware of his criminal background (Id. 80.) Venturella, according to Barrow, indicated that Barrow's criminal record would not be a problem. (Id. 79-80.)Venturella allegedly said on several occasions that "corporate" would not have any trouble with Barrow's criminal record and, if "corporate" had any problem with Barrow's criminal record, they would not let Barrow on the premises. (Id. 80, 87.)

Venturella testifies that Barrow only told him that there might be something in his background but did not provide details of his background. (Venturella Dep. 56.) He also testifies that he told Barrow that he did not make the employment decision and that the background check was left up to HR. (Id. 56-57.)

Barrow submitted applications for employment that were provided to him by the Defendants. (Declaration of David Torchia Dec. 18, 2008.) They are ServiceMaster applications for employment and indicate that the form was revised on August 1, 2006. The Defendants make no mention of these applications in their Reply brief so presumably this is essentially the same

application used by Barrow.

The Employment Application asks, "Have you ever been convicted of a felony?" This question is proceeded by the following statement:

> Any uncertainty in answering the questions below should be resolved in favor of disclosure. This information will not necessarily bar an applicant from employment. The nature and seriousness of the crime, the date of conviction, and the relation to the position sought will be considered. Applicants need not disclose information pertaining to sealed, expunged, pardoned, or statutorily eradicated arrest or conviction records.

## Alleged Fraudulent Practices

While Barrow was learning about the service technician position, he would work as a receptionist each morning and then, "almost daily," go out with the service technicians in the afternoon. (Barrow Dep. 145-46, 153.) He went out with Venturella, Caulfield and other technicians. (Id. 146-48.)

During this time, Barrow observed what he terms "fraudulent practices." (Compl. ¶ 6, Barrow Dep. 219.) The fraudulent practices that Barrow observed were that charges were made for services that were not performed, customers were overbilled, and chemicals were diluted. (Id. 206-28.)

## Letters To Management

Barrow has copies of five letters that he claims were sent to various individuals at Terminix in July of 2005. (Id. Ex. 10, 11, 12, 13, 14.) The first is dated July 8, 2005, is addressed to Katrina Helmkamp ("Helmkamp"), then President of Terminix, and complains about the fraud Barrow allegedly observed. (Id. 228, Ex. 10.) A copy of this letter was allegedly sent to

Johnathon Ward ("Ward"), the President of ServiceMaster.[2] (Id.)

The second letter, dated July 15, 2005, is addressed to Ward and complains about the alleged fraud and discrimination that Barrow allegedly observed. (Id. 234, Ex. 11.) Copies of this letter were allegedly sent to Helmkamp and Ernest Mrozek and James Goetz of ServiceMaster. (Id.)

The third letter, dated July 19, 2005, is addressed to Helmkamp and complains about the alleged fraud and discrimination that Barrow observed. (Id. 244, Ex. 12.) A copy of this letter was allegedly sent to Ward. (Id.)

The fourth letter, dated July 21, 2005, is addressed to Helmkamp and Ward. (Id. 245, Ex. 13.) It too complains of fraud and discrimination and indicates that Barrow is notifying the EEOC and the Attorney General. (Id.)

The fifth letter, dated July 25, 2005, is addressed to Helmkamp with copies to Ward and George Ventureus [Venturella]. (Id. 247, Ex. 14.) It complains of racism at Terminix. (Id.) Helmkamp testifies that she does not remember receiving any letters from Barrow and is not aware of any of his complaints. (Deposition of Katrina Helmkamp 31, 33-38 October 16, 2008.)

Barrow testifies that he provided a copy of each of these five letters to Venturella. (Barrow Dep. 247.) At least two other individuals testify that Venturella was unhappy and concerned about these letters and made his displeasure known. (Affidavit of Amanda McPherson ("McPherson Aff.") ¶ 7 June 1, 2006; Affidavit of Russell Osborn ("Osborn Aff.") ¶ 5 Nov. 29, 2006.) Further, at least three individuals affirm that they are aware of Terminix's questionable practices including dilution of chemicals and charging for services not rendered. (Osborn Aff. ¶

[2]ServiceMaster is alleged to be the parent of Terminix.

18;  (Declaration of Blaine Doug Rix ("Rix Decl.") ¶¶ 5,6 Dec. 18, 2008; Statement of James E. Simmons ("Simmons St.") ¶¶ 9 Dec. 15, 2008.)

## Second Application for Employment At Terminix

On or about August 1, 2005, Venturella had Barrow fill out a second application for a service technician position. (Barrow Dep. 84-85.) The application that Barrow had initially completed was lost. (Id. 87.) At the time, Venturella allegedly said for Barrow to go ahead and fill out the second application, "we already know what your offenses are." (Id. 78.) Barrow was also told that he would have to retake the test which he did and passed it. (Id.)

According to Terminix policy, no prospective employee was permitted to go into the field to evaluate whether they wanted to be a technician unless they had successfully completed a background check. (Caulfield Dep. 86; Venturella Dep. 58-59.) Further, Terminix had a policy at the time that it would not hire convicted felons. (Venturella Dep. 48, Caulfield Dep. 29, 35.) Finally, Maher was responsible for conducting the criminal background check on prospective employees. (Venturella Dep. 48.)

However, there is evidence that Terminix offered jobs to Caucasians with felony convictions. (Id. 67.) Blaine Rix, a white male, affirms that he was a convicted felon that was offered a job at Terminix when Terminix was aware of his felony conviction. (Rix Decl. ¶¶ 2, 5.) Rix also affirms that he knows of other white males with criminal records who were offered employment by Terminix. (Id. ¶ 8.) James Simmons, also a white male, affirms that he is a convicted felon and was offered a job at Terminix. (Simmons St. ¶¶ 3, 6.)

## Refusal To Hire

Barrow's last day as a Manpower temporary employee was August 5, 2005. (Barrow

Dep. 267-68.) The following week he contacted Venturella about the service technician position. (Id. 268.) Venturella told Barrow that, "they did not hire you, we can't hire you, we decided to go in a different direction." (Id. 271.) Barrow was allegedly not hired because he did not pass the background check. (Venturella Dep. 61.)

In Plaintiffs First Set of Interrogatories, the Defendants were asked to "state the name of every person who was consulted or provided information regarding the decision not to hire Plaintiff as a Technician in 2005." The Defendants responded, "Terminix did not remove plaintiff from his receptionist duties. Matthew Maher counseled George Venturella regarding the fact that, pursuant to Terminix policy, plaintiff could not be hired on as a Terminix employee as a full-time technician as he had failed his criminal background check." (Plt. Memo. Op. App'x I.)

Following Terminix's refusal to hire him, Barrow brought the lawsuit that is now before the Court. The Standard of Review for Motions for Summary Judgment will next be set forth.

**STANDARD OF REVIEW FOR MOTIONS FOR SUMMARY JUDGMENT**

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6thCir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations

must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

Barrow's complaint alleges claims pursuant to Ohio law. In reviewing an Ohio claim, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the state.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001)(quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998)). Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms. Inc. v. NOR-AM*

*Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)).

## ANALYSIS OF MOTION FOR SUMMARY JUDGMENT

The Defendants seek summary judgment on all three of Barrow's claims. Each will be addressed seriatim.

### Race Discrimination

Barrow alleges that Defendant failed to hire him because of his race in violation of Ohio Rev. Code 4112.02(A) as enforced through Ohio Rev. Code 4112.99 and 42 U.S.C. § 1981. Courts are to use federal disparate treatment law to analyze discrimination claims brought under Ohio Rev. Code 4112. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 668 (6th Cir. 2000); *Chandler v. Dunn Hardware, Inc.*, 860 N.E.2d 1042, 1044 (Ohio Ct. App. 2006). Using federal disparate treatment law, Barrow must either provide direct or indirect evidence of discrimination to avoid summary judgment. *Young v. Oakland County*, 176 Fed. Appx. 644, 648 (6th Cir. 2006)(citing *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 463 (6th Cir. 2003)).

Direct evidence is evidence which, if believed, proves the existence of improper discrimination without inference or presumption. *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 164-65 (6th Cir. 2004)(citing *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 357-58 (1977)). Statements made by non-decision makers or statements made by decision-makers that are not related to the decisional process are not considered direct evidence of improper discrimination. *Id.* Finally, the discriminatory remarks must be related to the employment decision in question. *Id.*

Indirect or circumstantial evidence is proof that does not on its face establish discriminatory animus. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir.

2003)(citing *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997)). Indirect evidence may, however, allow a factfinder to draw a reasonable inference that discrimination occurred. *Id.*

In this case, Barrow identifies no direct evidence of discrimination against him regarding Terminix's failure to hire him. Therefore, the Court must consider the indirect evidence that Barrow has provided.

Consideration of Indirect Evidence

When considering indirect evidence in a disparate treatment claim brought under Ohio Rev. Code 4112.02(A) and 28 U.S.C. § 1981, the court uses the familiar McDonnell Douglas burden-shifting framework. *Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000), *cert. denied*, 531 U.S. 1052 (2000). On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine issue of material fact at each stage of the McDonnell Douglas analysis. *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 703 (6th Cir. 2007). However, "[c]onclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008).

The McDonnell Douglas burden-shifting framework provides an allocation of the burden of production and an order for the presentation of proof in disparate treatment cases. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 659 (6th Cir. 2000)(citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993)). The framework is designed to "sharpen the inquiry to a level of specificity which best allows the fact-finder to resolve the ultimate question: whether the plaintiff established by a preponderance of the evidence that the defendant intentionally

discriminated against her." *Cline*, 206 F.3d at 660(citing *U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).

Under the McDonnell Douglas burden shifting framework, a plaintiff must first set forth a prima facie case of discrimination. *Arendale*, 519 F.3d at 603 (citing *Newman v. Federal Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001)). The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions. *Id.* If the employer does so, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. *Id.* The ultimate burden of persuasion remains at all times with the plaintiff. *Id.*

Prima Facie Case

A prima face case is defined as "sufficient evidence in the type of case to get plaintiff past a motion for directed verdict in a jury case or motion to dismiss in a nonjury case…." *Equal Employment Opportunity Commission v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)(citing *Black's Law Dictionary* 1190 (6th ed. 1990)). The purpose of the prima facie burden is to eliminate the most common nondiscriminatory reasons for the adverse action and raise an inference that the adverse action was motivated by discriminatory bias. *Birch*, 392 F.3d at 166(citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)).

The burden of establishing a prima facie case is not onerous. *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 (6th Cir. 1984)(citing *Burdine*, 450 U.S. at 253), *cert. denied*, 478 U.S. 1006 (1986). The plaintiff need only introduce evidence from which an inference of discrimination can be drawn. *Id.*

To establish a prima facie case of race discrimination in Terminx's hiring decision,

Barrow must establish by a preponderance of the evidence that: (1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment decision; and (4) he was rejected for the position and Terminix continued to seek applications from persons with Barrow's qualifications and/or that a person outside the protected class was hired. *Birch*, 392 F.3d at n.12 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *Avery*, 104 F.3d at 862.

When analyzing the prima facie case, a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003)(citing *Cline*, 206 F.3d at 660-61. "To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." *Id.*

An employer may not defeat a prima facie case by asserting that the plaintiff failed to satisfy **subjective** qualifications. *Equal Employment Opportunity Commission v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192 (10th Cir. 2000). Further, when an employee's failure to meet **objective** qualifications is one of the reasons advanced by an employer to dispel the inference of discrimination raised by an employee at the prima facie stage, it cannot also be used to defeat the employee's prima facie case. *Id.* at 1193. To do so would collapse the first and second stages of the McDonnell Douglas framework. *Id.* Finally, **objective**, employer-imposed qualifications that have no bearing on an applicant's ability to perform the job sought, like subjective qualifications, are more properly considered at the second stage of the McDonnell Douglas framework and a failure to meet such qualifications cannot be used to defeat plaintiff's prima facie case. *Id.* at 1194 (to meet the prima facie requirement, the plaintiff need only to

present some credible evidence that he or she possessed the basic skills necessary to perform the assignment sought); *see also Cline*, 206 F.3d at 660-61 (a court must resolve the debate regarding whether an employee is unqualified for failure to comply with an employer's challenged policy at a stage beyond the prima facie stage of the McDonnell Douglas framework).

## Legitimate Nondiscriminatory Reason

At the second stage of the McDonnell Douglas framework, an employer must set forth, through the introduction of admissible evidence, the reasons for its decision. *Clay*, 501 F.3d at 703. The employer cannot meet its burden merely through an answer to the complaint or by the argument of counsel. *Id.* at 703-04. Further, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made. *Clay*, 501 F.3d at 713(citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)).

## Pretext for Discrimination

If the employer meets its burden of production to show a legitimate nondiscriminatory reason for its action, the burden shifts back to the plaintiff to show that the legitimate nondiscriminatory reason (1) has no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Clay*, 501 F.3d at 704 (citing *Johnson v Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003)). A reason cannot be a pretext for discrimination unless it is shown that the reason is both false and that discrimination was the real reason. *Johnson*, 215 F.3d at 573 (citing *St. Mary's Honor Center*, 509 U.S. 502). Finally, to show pretext, an employee may not rely upon his prima facie evidence, but must, instead, introduce additional evidence of discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

When considering pretext, statements by non decisionmakers or statements by decisionmakers unrelated to the decisional process at issue cannot suffice to satisfy plaintiff's burden of demonstrating animus. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)(citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989)). As a result, an isolated discriminatory remark made by one with no managerial authority over the challenged personnel decision is not considered indicative of discrimination. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998). Also as a result, a statement by an intermediate level management official is not indicative of discrimination when the ultimate decision is made by an upper level official. *Wells v. New Cherokee Corp.*, 58 F.3d 233, 237 (6th Cir. 1995), *cert. denied*, 452 U.S. 938 (1981). However, courts must consider any statements made by those who are meaningfully involved in the decision. *Id.*

"Discriminatory intent may be established by any evidence logically supporting an inference of that intent." *Jackson*, 743 F.2d at 378 (citing *Detroit Policy Officers Association v. Young*, 608 F.2d 671 (6th Cir. 1979), *cert. denied* 452 U.S. 938 (1979)). For example, regarding the speaker's role, when an adverse hiring decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias, the employer may be held liable. *Arendale*, 519 F.3d at n.13 (citing *Ercegovich*, 154 F.3d at 355. The discriminatory remarks of those who may have influenced the decision may be relevant when the plaintiff challenges the motive behind that decision. *Id.*

The reasonableness of an employer's decision may be considered to the extent that such a question sheds light on whether the employer's proffered reason for the employment decision was its actual motivation. *Wexler*, 317 F.3d at 576 (citing *Smith*, 155 F.3d at 807). If the

employer demonstrates that its actions, while perhaps "mistaken, foolish, trivial, or baseless," were not taken with discriminatory intent, the employer arguably lacks the discriminatory intent which is the focus of a discrimination suit. *Clay*, 501 F.3d at 715(quoting *Smith*, 155 F.3d at 806).

In addition to examining the speaker's role, the substance of the discriminatory remarks must also be considered. *Ercegovich*, 154 F.3d at 355. Isolated and ambiguous comments are irrelevant to a finding of discrimination. *Id.*

Analysis Using McDonnell Douglas Burden-Shifting Framework

The Defendants do not dispute, for purposes of their Motion for Summary Judgment, that Barrow was a member of a protected class, that Barrow suffered an adverse employment decision or that Barrow was rejected for the Service Technician position and Terminix continued to seek applications from persons with Barrow's qualifications and/or that a person outside the protected class was hired as a Service Technician. Thus, there is no dispute that Barrow has satisfied three of the four elements of a prima facie case of race discrimination.

The Defendants do, however, argue that Barrow was not qualified for the Service Technician position because he was a convicted felon. This is also the only legitimate nondiscriminatory reason that Defendants have given for not hiring Barrow.

Barrow's felony convictions will not be considered under the prima facie analysis for three (3) reasons. First, the burden of establishing a prima facie case is not onerous and Barrow has introduced evidence that he passed Terminix's test for Service Technicians and went out with other Service Technicians at a time when the Manager of Terminix's North Dayton Branch knew he was a convicted felon. He has presented evidence that he has the basic skills required of the Service Technician position.

Second, the Court is instructed to not consider Terminix's legitimate nondiscriminatory reason at the prima facie stage. To do otherwise would bypass the burden-shifting analysis and deprive Barrow of the opportunity to show that the legitimate nondiscriminatory reason was actually a pretext for discrimination.

Third, Terminix's requirement that its Service Technicians have no felony convictions is an objective employer qualification that has no bearing on a Service Technician's ability to perform his or her functions. Such objective qualifications are more properly considered at the second stage of the McDonnell Douglas burden-shifting framework and a failure to meet such qualifications cannot be used to defeat Barrow's prima facie case.

The Defendants cite *Strong v. Orkand Corp*, 83 Fed. Appx. 751, 753 (6th Cir. 2003), for the proposition that Barrow's felony convictions disqualified him from the position of Service Technician at the prima facie stage. In *Strong*, the job applicant did not meet the prima facie qualification requirement where the applicant did not obtain a background security clearance and he was hired contingent upon his ability to obtain a background security clearance. The applicant was specifically advised that without a favorable background check, the employment offer would be withdrawn. *Id.*

The Defendants' reliance on Strong is unpersuasive for two (2) reasons. First, *Strong* may have been wrongly decided. In *Strong*, the court used a failure to pass a background clearance as part of the prima facie analysis when the caselaw instructs that such evidence should not be considered as part of the prima facie case but should be considered in the later stages of the McDonnell Douglas burden-shifting framework.

Second, *Strong* is factually distinguishable from this case. In *Strong*, the applicant was conditionally hired subject to a security check and he was given the opportunity to appeal the

-19-

denial of his security clearance. Here, Barrow was not told that this criminal record was a problem and thus had no opportunity for appeal of the decision. In *Strong*, there was no conflicting evidence about whether a background check was required and in this case there is. Finally, in *Strong*, the court went beyond the issue of qualifications and analyzed the remaining stages of the McDonnell Douglas burden-shifting framework.

In sum, Barrow has identified indirect evidence which, if believed, satisfies the elements of a prima facie case that he was discriminated against because of his race by Terminix's failure to hire him. The analysis next turns to Terminix's reason for not hiring Barrow.

Legitimate Nondiscriminatory Reason

Terminix identifies evidence that it did not hire Barrow because Barrow was a convicted felon and Terminix had a policy against hiring convicted felons. Barrow does not argue that this reason is not a legitimate reason or that this reason is discriminatory. Therefore, Terminix has articulated a legitimate nondiscriminatory reason for not hiring Barrow. Barrow now has the burden of presenting evidence that Terminix's legitimate nondiscriminatory reason for not hiring him is a pretext for discrimination.

Pretext

Barrow argues that Terminix's legitimate nondiscriminatory reason for not hiring him had no basis in fact, was insufficient to motivate the decision and did not motivate the decision. In other words, Barrow argues that Terminix's legitimate nondiscriminatory reason for not hiring him is a pretext for discrimination.

First, there is conflicting evidence about the reason that Terminix did not hire Barrow. Venturella allegedly told Barrow that Barrow's criminal background would be no problem. When informing Barrow that he would not be hired, Venturella allegedly told Barrow that

Terminix had decided to go "in a different direction." The Defendants now claim that Barrow was not hired because he did not pass a background check.

Second, there is conflicting evidence about whether Barrow failed a background check. Barrow went out into the field to observe other Service Technicians after he completed his first application. Caulfield and Venturella both indicate that potential hires are not permitted to go out into the field unless they have completed a background check. (Caulfield Dep. 33, 86-87; Venturella Dep. 58-59.) If Barrow passed a background check in order to spend time in the field observing, there is no basis in fact for Terminix's assertion that Barrow was not hired because he failed a background check.

Third, the Defendants have presented no evidence that they acted in accordance with the statement on the employment application which presumably is at least part of their stated policy regarding background checks. There is no evidence that Terminix ever considered the nature and seriousness of the crimes, the date of conviction and the relation to the position sought as stated on the employment application.

Finally, there is evidence that Caucasians with felony records were offered jobs by Terminix. Both Rex and Simmons have submitted affidavits indicating that they were offered Service Technician positions at Terminix. Both are Caucasian and both are convicted felons.

The Defendants argue that there is no evidence that Maher knew of Barrow's race. However, there is evidence that Maher may not have been the decision-maker or that, if he was, he may not have followed policy or that a background check may already have been made.

The Defendants also argue that there is no evidence that Venturella had authority to override Maher. However, there is evidence that Venturella, if not the decision-maker, was clearly involved in the decision-making process.

In sum, Barrow has submitted evidence showing that Terminix's legitimate nondiscriminatory reason for not hiring him may have had no basis in fact, may not have motivated Terminix's decision to not hire him and may have been insufficient to warrant not hiring him. There is evidence from which a reasonable juror could conclude that Terminix's reason for not hiring Barrow was a pretext for discrimination.

Barrow has presented evidence of a prima facie case of discrimination when Terminix failed to hire him. Terminix then provided a legitimate nondiscriminatory reason for not hiring Barrow. Finally, Barrow has presented evidence from which a reasonable juror could conclude that Terminix's legitimate non discriminatory reason was a pretext for discrimination. Therefore, there are genuine issues of material fact and the Defendants are not entitled to judgment as a matter of law on Barrow's race discrimination claim.

## Retaliation

In Count II of his Complaint, Barrow alleges that Defendant refused to hire him because he engaged in protected conduct by complaining about race discrimination in violation of Ohio Rev. Code 4112.02(I). As set forth above, Courts are to use federal disparate treatment law to analyze discrimination claims brought under Ohio Rev. Code 4112. The analysis of this claim, then, uses the same McDonnell Douglas burden-shifting framework as Barrow's race discrimination claim except that the elements of a prima facie case are different.

To establish a prima facie case of retaliation, Barrow must establish that: (1) he engaged in activity protected by civil rights law, (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Arendale*, 519 F.3d at 606 (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th

Cir. 2000)).[3]

Regarding the first element, an employee who opposes a practice that has been made unlawful is protected. *Mulvin v. City of Sandusky*, 320 F. Supp.2d 627, 634 (N.D. Ohio 2004). Protected activities include making a charge, testifying, assisting or participating in any manner in an investigation, proceeding, hearing or litigation under civil rights laws. *McElroy v. Philips Medical Systems North America, Inc.*, No. 03-6219, 03-6351, 2005 WL 406335 at *10 (6th Cir. Feb. 18, 2005).

To satisfy the second element, the employer must know that the employee engaged in the protected activity before the adverse employment action was taken. *Mulvin*, 320 F. Supp.2d at 634. Further, there can be no causal link between protected activity and an adverse employment decision if the employer was unaware of the protected activity. *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994).

Regarding the third element, an adverse employment action in most cases is an employment action that inflicts direct economic harm. *White v. Burlington Northern & Santa Fe Railway Co.*, 364 F.3d 789, 798 (6th Cir. 2004)(citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998)), *aff'd* 548 U.S. 53 (2006). Adverse employment actions are significant changes in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change to benefits. *Id.*

Regarding the fourth element, a causal link requires the plaintiff to present evidence

---

[3]The Defendants argue that Barrow's retaliation claim must be dismissed if he cannot show that he was qualified for the Service Technician position. This argument is based upon *Palmer v. Health Care Manor Care*, 85 F. Supp.2d 757, 760 (N.D. Ohio 2000). However, the *Palmer* court used the same prima facie elements set forth here. *Id.* at 760. The prima facie elements used by the *Palmer* court do not include a qualification requirement.

sufficient to raise the inference that the protected activity was the likely reason for the adverse action. *Zanders v. National Railroad Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990)(citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)). While temporal proximity between an assertion of civil rights and an adverse employment action "provides highly probative evidence of a causal connection, 'temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence.'" *Arendale*, 519 F.3d at 606 (quoting *Nguyen*, 229 F.3d at 566).

Analysis of Retaliation Claim

Barrow identifies evidence that he wrote several letters to the President of Terminix and others complaining of race discrimination. Thus, there is evidence that Barrow engaged in protected activity.

The Defendants present evidence that none of their representatives received these letters. However, Barrow identifies evidence that he sent the letters and evidence that Venturella was aware of them.

The Defendants subsequently refused to hire Barrow. This is an employment action adverse to Barrow.

The four letters complaining about race discrimination are dated from July 15 to July 25, 2005. This is during the time when Terminix was considering whether to hire Barrow. Terminix informed Barrow that he would not be hired during the week beginning August 8, 2005. In addition to the temporal proximity, there is evidence that Venturella was aware of, unhappy and concerned about the letters.

Therefore, Barrow has presented evidence that satisfies all four (4) elements of a prima facie case of retaliation. The analysis next turns to Terminix's reason for not hiring Barrow.

Legitimate Nondiscriminatory Reason

Terminix offers the same legitimate nondiscriminatory reason for the alleged retaliation as it does for its failure to hire Barrow. Terminix identifies evidence that it did not hire Barrow because Barrow was a convicted felon and Terminix had a policy against hiring convicted felons. Barrow does not argue that this reason is not a legitimate reason or that this reason is discriminatory. Therefore, Terminix has articulated a legitimate nondiscriminatory reason for not hiring Barrow. Barrow now has the burden of presenting evidence that Terminix's legitimate nondiscriminatory reason for not hiring him is a pretext for retaliation.

Pretext

Barrow argues that all of the arguments and evidence set forth regarding pretext for his race discrimination claim "apply equally" to his retaliation claim. Each argument Barrow presented for his race discrimination claim will, therefore, be considered.

Barrow first argues that, because there is conflicting evidence about the reason he was not hired, the alleged non compliance with Terminix's policy regarding a background check is a pretext for retaliating against him. Barrow next argues that, because there is conflicting evidence about whether he failed the background check, the alleged non compliance with Terminix's policy regarding a background check is a pretext for retaliating against him. Both of these are evidence that Terminix's legitimate nondiscriminatory reason may have been a pretext for retaliating against him because he complained about race discrimination.

Barrow next argues that because Caucasians with felony records were offered employment, the alleged noncompliance with Terminix's policy regarding a background check is a pretext for retaliating against him. However, Barrow presents no evidence that others who complained about race discrimination were offered positions at Terminix. Therefore, this

argument and evidence is not a pretext for retaliating against him because he complained of race discrimination.

Barrow next argues that because Venturella allegedly told Caulfield that he [Venturella] did not want any more blacks on staff, Terminix's policy regarding a background check is a pretext for retaliating against him. However, while this argument may be relevant to a pretext to race discrimination, it is not relevant to retaliation for complaining about race discrimination.

Barrow's final argument is that, if for some reason a jury would conclude that Maher was the decision-maker, it could find that Maher did not act according to Terminix policy. Here, Barrow is referring to the statement, as set forth above, on the employment application that Terminix would consider the nature and seriousness of the crime, the date of conviction and the relation to the position sought. Not acting in accordance with the background check policy could show that Terminx's legitimate nondiscriminatory reason that Barrow was not hired did not actually motivate Terminix's decision to not hire him.

Therefore, while some of the arguments and evidence set forth regarding pretext for Barrow's race discrimination claim do not apply to his retaliation claim, some do.

The Defendants argue that there is no evidence that Maher knew of Barrow's complaints about race discrimination. However, there is evidence that Maher may not have been the decision-maker or that he did not follow policy or that a background check may have already been made.

The Defendants also argue that there is no evidence that Venturella had authority to override Maher. However, there is evidence that Venturella, if not the decision-maker, was clearly involved in the decision-making process.

In sum, Barrow has submitted evidence showing that Terminix's legitimate

nondiscriminatory reason for not hiring him may have had no basis in fact, may not have motivated Terminix's decision to not hire him and may have been insufficient to warrant not hiring him. There is evidence from which a reasonable juror could conclude that Terminix's reason for not hiring Barrow was a pretext for retaliation.

Barrow has presented evidence of a prima facie case of retaliation when Terminix failed to hire him. Terminix then provided a legitimate nondiscriminatory reason for not hiring Barrow. Finally, Barrow has presented evidence from which a reasonable juror could conclude that Terminix's legitimate non discriminatory reason was a pretext for retaliation. Therefore, there are genuine issues of material fact and the Defendants are not entitled to judgment as a matter of law on Barrow's retaliation claim.

## Public Policy

The Defendants move for summary judgment on Count III of Barrow's Complaint for violation of Ohio public policy. The Defendant allegedly retaliated against Barrow for his good faith complaints regarding fraud against consumers in violation of Ohio public policy.

However, Ohio does not provide for public policy tort actions involving wrongful failures to hire or wrongful retaliations. *Bools v. General Electric Co.*, 70 F. Supp.2d 829, 832 (S.D. Ohio 1999). Barrow does not now argue otherwise.

Therefore, there are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law on Count III of Barrow's Complaint. Count III of Barrow's Complaint for violation of Ohio public policy is dismissed.

## CONCLUSION

There are genuine issues of material fact on Barrow's race and retaliation claims. Therefore, the Defendants are not entitled to judgment as a matter of law on these claims.

However, Ohio does not provide for public policy tort actions involving wrongful failures to hire or wrongful retaliations. Therefore, Count III of Barrow's Complaint for violation of Ohio public policy fails as a matter of law and must be dismissed. In sum, the Defendants' Motion for Summary Judgment is GRANTED IN PART and OVERRULED IN PART. Barrow's race discrimination and retaliation claims remain to be adjudicated.

DONE and **ORDERED** in Dayton, Ohio this Twenty-Ninth day of January, 2009.

**s/Thomas M. Rose**

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record