UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

SAMUEL BARROW,

          Plaintiff,

-v-

TERMINIX INTERNATIONAL
CO., L.P., et al.,

          Defendants.

Case No. 3:07-cv-324

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING IN PART AND OVERRULING IN PART DEFENDANTS' TWO MOTIONS IN LIMINE (Doc. #49 and 50) AND BARROW'S MOTION IN LIMINE (Doc. #51)**

---

This matter is set for trial beginning on November 16, 2009. Plaintiff Samuel Barrow's ("Borrow's") Complaint includes three Counts. Count I is for race discrimination, Count II is for retaliation based upon race and Count III is for violation of Ohio public policy. Count III was dismissed by the Court pursuant to Defendant's (Terminix and George Venturalla) Motion for Summary Judgment. Counts I and II remain to be tried to a Jury. Barrow has filed for banktrupcty and the Bankruptcy Trustee is representing him in this case.

Now before the Court are two Motions In Limine made by the Defendants (docs. #49, 50) and one Motion in Limine made by Barrow (doc. #51). All three of these Motions are now fully briefed and ripe for decision.

**Relevant Legal Provisions**

The practice of ruling on motions in limine, although not specifically authorized by the Federal Rules of Evidence or the Federal Rules of Civil Procedure, has developed pursuant to the district court's inherent authority to manage the conduct of trials. *Luce v. United States*, 469 U.S.

38, 41 n.4 (1984). The purpose of a motion in limine is to permit the Court to decide evidentiary issues in advance of trial in order to avoid delay and ensure an evenhanded and expeditious trial. *See Indiana Insurance Co. v. General Electric Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004)(citing *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997)). Decisions on motions in limine may also save the parties time and cost in preparing for trial and presenting their cases.

Evidence is generally admissible if it is relevant and not unfairly prejudicial. *Reed v. National Linen Service*, No. 97-5545, 1999 WL 407463 at *7 (6th Cir. June 2, 1999). However, because it is almost always better situated during the actual trial to assess the value and utility of evidence, a court is reluctant to grant broad exclusions of evidence in limine. *Koch v. Koch Industries, Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan. 1998), *aff'd in part and rev'd in part on other grounds*, 203 F.3d 1202 (10th Cir. 2000), *cert. denied*, 531 U.S. 926 (2000). A court will generally not grant a motion in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. *Indiana Insurance*, 326 F. Supp.2d at 846. If this showing is not made, evidentiary rulings should be deferred and resolved in the context of the trial. *Id.*

Ultimately, whether a motion in limine is granted or overruled is a matter left to the sound discretion of the trial court. *See Hesling v. CSX Transportation, Inc.*, 396 F.3d 632, 643-44 (5th Cir. 2005). Each of the pending motions in limine will next be addressed keeping in mind that the overruling of a motion in limine at this stage in the proceedings does not necessarily mean that the subject evidence will be admissible in the context of the trial.

**ANALYSIS**

The Defendants' Motions In Limine discuss five separate evidentiary issues. Barrow's Motion In Limine discusses four separate evidentiary issues. Each evidentiary issue will be addressed seriatim.

**<u>Barrow's Testimony Regarding Acts of Discrimination That He Did Not Witness</u>**

The Defendants seek an evidentiary ruling that Barrow may not testify regarding any alleged acts of discrimination that he did not witness. This argument is based upon Fed. R. Evid. 602 which provides that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter."

Barrow responds that, in a retaliation case, a plaintiff must demonstrate that he had a good faith basis to complain about discrimination, and he should be permitted to testify regarding events, regardless of whether they were directed at him or occurred in his presence, to show that he had a reasonable belief that discrimination existed. In support, Barrow cites *Johnson v. University of Cincinnati*, 215 F.3d 561 (6th Cir. 2000), *cert. denied*, 531 U.S. 1052 (2000) and *Jackson v. Quanex*, 191 F.3d 647 (6th Cir. 1999). However, while *Johnson* may stand for the proposition that a plaintiff must demonstrate a good faith basis to complain about discrimination, it does not stand for the proposition that a plaintiff may introduce otherwise inadmissible evidence to demonstrate a good faith basis. Also, while *Jackson* may stand for the proposition that, for a hostile work environment claim, a plaintiff may present evidence of harassment not directed at or witnessed by the plaintiff, it does not stand for the proposition that the evidence presented does not have to otherwise meet the standards set forth in the Federal Rules of Evidence.

Barrow may not testify regarding any matter about which he does not have personal

knowledge. Barrow's personal beliefs are, of course, a matter about which he has personal knowledge. However, details of the events that caused him to form those personal beliefs may not be matters about which he has personal knowledge.

**Testimony and Other Evidence Regarding Alleged Acts of Discrimination Pertaining To Individuals Other Than Barrow**

The Defendants next seek a ruling that evidence relating to incidents of alleged racial discrimination directed to those other than Barrow is inadmissible because it is irrelevant and would serve to inflame and mislead the jury. Specifically, the Defendants seek to exclude testimony from Barrow and other witnesses, including Ms. Mitchell, Amanda McPherson, Larry Brame and William Carter, that minorities were denied an opportunity to submit applications to Terminix while Caucasian applicants were asked to submit applications; testimony from Barrow and other witnesses, including Mr. Carter, regarding responses to a race discrimination class action notification Barrow placed in the Dayton Daily News on October 23, 2005; and evidence of discriminatory comments allegedly made by individuals at Terminix that were not directed toward Barrow.

Barrow responds that there is no per se rule barring the testimony of others who have been the victims of discrimination at the hands of the same employer. Barrow also responds that he has not listed Ms. Mitchell, Larry Brame or William Carter as witnesses; that Amanda McPherson is expected to testify that she was given an application for employment and answers to a test that applicants were required to take; and that Barrow does not intend to call any witnesses to testify about the ad he placed in the newspaper after Terminix refused to hire him.

In a discrimination case alleging disparate treatment, the plaintiff must show that the defendant failed to, in this case, hire him or her because of his or her, in this case, race. *Grano v.*

*Department of Development of City of Columbus*, 637 F.2d 1073, (6th Cir. 1980). Further, in a disparate treatment case, the plaintiff must prove discriminatory intent. *Grano*, 637 F.2d at 1081; *Conklin v. Lovely*, 834 F.2d 543, 550 (6th Cir. 1987)(retaliation against other employees who engaged in protected activity is relevant and can create an inference of illegal motivation). Because discriminatory intent is so difficult to prove by direct evidence, indirect evidence is many times used. *Id.* at n.7.

Thus, in a disparate treatment case where there is no direct evidence of discrimination, a plaintiff must present indirect evidence that he was intentionally not hired because of his race. The issue raised in this branch of the Motions In Limine is whether evidence that others have been discriminated against due to their race is indirect evidence that the Terminix intended to discriminate against Barrow and whether such evidence is unduly prejudicial.

In 1980 in the case of *Grano v. Department of Development of City of Columbus*, 637 F.2d 1073, 1079 (6th Cir. 1980), the Sixth Circuit determined that a finding that the defendants had discriminated against another individual supports an inference that the defendant discriminated against the plaintiff. In 1987 in the case of *Conklin v. Lovely*, 834 F.2d 543, 550 (6th Cir. 1987), the Sixth Circuit determined that retaliation against other employees who engaged in protected activity is relevant and can create an inference of illegal motivation. In 1988 in the case of *Schrand v. Federal Pacific Electric Co.*, 851 F.2d 152, 156-57 (6th Cir. 1988), the Sixth Circuit determined that, even if evidence that others were discriminated against was relevant, admitting it would violate Fed. R. Evid. 403 because the probative value of such evidence is substantially outweighed by the danger of unfair prejudice. In 1997 in the case of *Williams v. Nashville Network*, 132 F.3d 1123 (6th Cir. 1997), the Sixth Circuit upheld the

district court's exclusion of evidence regarding the failure to hire an individual other than the plaintiff because it was irrelevant since the other individual applied for a different position with different qualifications and hiring requirements, the other individual applied six years before the alleged discriminatory act and different people at the defendant's place of business reviewed the other individual's application. In 1999, in the case of *Reed*, 1999 WL 407463 at *7, the Sixth Circuit determined that a plaintiff's testimony that others were discriminated against is potentially prejudicial and not particularly probative of whether a defendant discriminated against the plaintiff. In 2005 in the case of *Hildebrant v. Hyatt Corp*, 154 Fed. Appx. 484, 489 (6th Cir. 2005), the Sixth Circuit quoted with favor a trial court's statement that, "[y]ou can't prove discrimination against her by showing that anyone else was allegedly discriminated against."

Thus, as indicated by the above cases, whether evidence is relevant and not unfairly prejudicial depends upon the context in which it is attempted to be presented. As a result, an evidentiary ruling on the issues raised by this branch of Defendants' Motion In Limine will be deferred and resolved in the context of the trial.

**Testimony and Evidence Regarding Alleged Statements Made By Non-Decisionmakers**

The Defendants next seek to exclude testimony and evidence regarding alleged discriminatory statements made by George Venturella ("Venturella"), by Mr. Caufield and by other personnel from the Dayton, Ohio Terminix branch because they allegedly were not involved in and did not influence the decision to not hire Barrow. Barrow responds that the evidence will show that Venturella and others were involved and/or influenced the decision to not hire Barrow.

As this Court set forth in its Entry and Order on Defendants' Motion for Summary Judgment (doc. #41), statements made by non-decision makers or statements made by decision makers unrelated to the decisional process at issue, cannot suffice to satisfy Barrow's burden of demonstrating animus. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998). However, discriminatory remarks made by those who may have influenced the decision may be relevant when Barrow challenges the motive behind the decision. *See Arendale v. City of Memphis*, 519 F.3d 587, n.13 (6th Cir. 2008).

There is a dispute in this case as to whether Venturella and the others were decision makers or influenced the decision not to hire Barrow. This dispute will be resolved at trial either by the Court or by the Jury. As a result, an evidentiary ruling on the issues raised by this branch of Defendants' Motion In Limine will be deferred and resolved in the context of the trial.

**Testimony and Evidence Regarding Events That Occurred After Terminix Declined To Hire Barrow**

The Defendants next argue that testimony and evidence regarding events that occurred after Terminix declined to hire Barrow should be excluded because it is irrelevant and highly prejudicial. The Defendants specifically refer to a letter which alleges discriminatory practices that Barrow purportedly sent to Venturella on August 9, 2009.

Barrow responds that the Defendants appear to request a blanket prohibition regarding any discussion or evidence relating to facts that occurred after August 5, 2009. As an example, Barrow cites a letter to Venturella that he drafted on August 9, 2009, complaining about the fact that he was not hired by Terminix.

Generally, events that occur after the alleged discrimination are not relevant to the alleged discrimination. *See Meeker v. Vitt*, No. 1:04cv1318, 2006 U.S. Dist. LEXIS 15009 at

*24-25 (N.D. Ohio Mar. 31, 2006). However, without more, this Court is unable and unwilling to disallow a broad category of possible evidence. Therefore, an evidentiary ruling on the issues raised by this branch of Defendants' Motion In Limine will be deferred and resolved in the context of the trial.

### Evidence Relating To Barrow's Ohio Public Policy Claim

Defendants next seek to exclude Barrow from offering statements, testimony, references, inferences, exhibits or other evidence related to his Ohio Public Policy claim. Barrow responds that he does not intend to present evidence that he was not hired in retaliation for his complaints about fraud but he should not be precluded from introducing evidence that he simultaneously complained in a letter about both discrimination and fraud. Defendants then request that any part of the evidence that Barrow wishes to submit referring to fraud should be redacted.

Barrow's Ohio Public Policy claim has been dismissed. His Ohio Public Policy claim was based upon retaliation for complaints of fraud. Therefore, he may not introduce evidence that relates <u>only</u> to the fraud claim. However, evidence that relates to his pending claims, if relevant and not unduly prejudicial, is admissible. The Court will reserve ruling as to specific evidence regarding fraud that may be included in evidence that may be introduced because no attempt has yet been made to introduce the evidence and the Court has, of course, not seen or heard the evidence.

### The "Most Wanted" Article

Barrow argues that an October 1995 article from the Dayton Daily News which pictured him and identified him as on of the "Miami Valley's Most Wanted" is not admissible because it is unduly prejudicial. The Defendants respond that the article accurately identifies one of the

crimes on which Barrow was subsequently convicted and that the nature of Barrow's race discrimination and retaliation claims require them to show that he was denied employment because of the timing and severity of his prior criminal convictions.

The "Most Wanted" article is not admissible for at least two reasons. First, it is not evidence of a conviction but evidence that the police were looking for Barrow. Second, it is unduly duplicative and misleading because Defendants have said they plan to introduce evidence of Barrow's convictions.

## The Brannon Letter

Barrow seeks to exclude the "Brannon Letter" because the allegations in the letter are not true and are irrelevant to this case. The Defendants respond that the "Brannon Letter" is further evidence of motive, common scheme or plan and intent behind Barrow's allegations in this case and because Barrow's character for truthfulness is at issue in this case.

The Court has not seen the "Brannon Letter" that is allegedly unsigned and unauthenticated by the author. Therefore, an evidentiary ruling at this time would be inappropriate. However, the Court will not admit unauthenticated evidence and sees no need to conduct a mini-trial on the contents of the "Brannon Letter." Also, since its relevancy to this case is, at best, questionable, it should not be mentioned or used until deemed admissible by the Court.

## Barrow's Other Litigation

Barrow seeks to preclude evidence of other lawsuits that he has filed. The Defendants respond that, since Barrow has claimed emotional damages in this lawsuit, they are entitled to ask Barrow questions regarding other events that may have contributed to or affected the

emotional distress that he is now claiming.

The Defendants are certainly entitled to ask Barrow questions regarding other events that may have contributed to or affected the emotional distress that he is now claiming. *See i.g. Burnside v. Washtenaw Mortgage Co.*, 2002 U.S. Dist. LEXIS 13325 at *21 (S.D. Ohio Jul. 15, 2002). However, the Defendants can ask questions regarding other events that may have contributed to or affected the emotional distress that he is now claiming without eliciting evidence of other lawsuits that he has filed, none of which seem to have been resolved on the merits. The Defendants may not elicit or introduce evidence of other lawsuits that Barrow has filed.

### The Allegation That Barrow Asked a Witness In Another Litigation To Lie

Barrow seeks to prohibit evidence that he allegedly submitted an unsigned affidavit by Heather Kurtz ("Kurtz") and that he asked Kurtz to lie. Barrow argues that, if the Defendants call Heather Kurtz at trial, he will be forced to call Lisa Bush ("Bush") who will testify that Kurtz did sign the affidavit and that Kurtz accepted money to change her testimony resulting in a mini-trial. Barrow also argues that neither Kurtz nor Bush has personal knowledge of any of the facts or events leading to his lawsuit against Terminix and Venturella.

The Defendants respond that Kurtz's testimony is further evidence of motive, common scheme or plan and intent behind Barrow's allegations in this case, namely the creation of false allegations to be successful in litigation. The Defendants also argue that Barrow's character for truthfulness is at issue in this case.

While Barrow's character for truthfulness may be at issue in this case, the Court fails to see how Kurtz's testimony is evidence of the creation of allegedly false allegations in this case. If

Kurtz has evidence of Barrow's truthfulness, she may testify and be cross examined. However, Barrow may also introduce evidence regarding Kurtz's character for truthfulness.

## CONCLUSION

Defendants' first Motion In Limine (doc. #49) is GRANTED IN PART and OVERRULED IN PART. Barrow may not testify regarding any matter about which he does not have personal knowledge, however, Barrow's personal beliefs are, of course, a matter about which he has personal knowledge. Evidentiary rulings on testimony and other evidence regarding alleged acts of discrimination pertaining to individuals other than Barrow, testimony and evidence regarding alleged statements made by non-decision makers, and testimony and evidence regarding alleged events and discrimination that occurred after Terminix declined to hire Barrow will be deferred and resolved in the context of the trial.

Defendants' second Motion In Limine (doc. #50) is also GRANTED IN PART and OVERRULED IN PART. Barrow will not be permitted to offer evidence that relates **only** to his Ohio public policy claim that has been dismissed by this Court.

Barrow's Motion In Limine (doc. #51) is GRANTED IN PART and OVERRULED IN PART. The "Most Wanted" article and the "Brannon Letter" are not admissible. While Barrow's other lawsuits are inadmissible, the Defendants may, of course, question Barrow regarding other events that may have contributed to or affected the emotional distress that he is now claiming. Finally, the Defendants may introduce testimony regarding Barrow's character for truthfulness and Barrow may respond.

The overruling of a motion in limine at this stage in the proceedings does not necessarily mean that the subject evidence will be admissible in the context of the trial. Further, motions to

exclude evidence may be renewed at trial.

DONE and **ORDERED** in Dayton, Ohio this Third day of November, 2009.

                                              **s/Thomas M. Rose**

                                              _____
                                                  THOMAS M. ROSE
                                         UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record